NORA SHANAHAN, ADMINISTRATRIX, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED JANUARY 24, 1912.  No. 16,578.

**Carriers: INJURY TO PASSENGER: EVIDENCE: INSTRUCTION.** Plaintiff's intestate took passage on a through-freight train from a point in Iowa to a point in this state, accompanying live stock and household goods, traveling in the car as a caretaker. When the train

came to the city of H., in this state, the car was detached and placed on a proper side-track in the track yards, to be taken to its destination by a local train the next morning, the through freight not stopping at the point of destination. During the intervening night deceased sought his car, and there was some evidence tending to show that he found it, and afterward left it and was found in a fatally injured condition by the side of the main-line track, a considerable distance from his car. At about the hour of 2 o'clock A. M. a fast passenger train came in from the west, running at the rate of 25 to 35 miles an hour. The fireman on the engine saw an object about 140 feet ahead of the train, outside of the track and on his side thereof, but was unable to detect what it was. As the engine passed it, it assumed the shape and form of a human being, but lying outside and free from the track. After the train had passed on to the station, he informed defendant's employees of what he had seen, and they went to the spot and found deceased injured and lying outside of, but near, the track. The defendant asked the court to instruct the jury, in substance, that if they found that deceased reached his car, and afterward left it and wandered upon the tracks and placed himself on the ground near enough to the main-line track to be injured by a passing train, he would be a trespasser, and the enginemen were not bound to expect his presence there, nor look out with a view to discover him, and the defendant would not be liable for not stopping the train before passing him. *Held* error to refuse such instruction.

APPEAL from the district court for Kearney county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*James E. Kelby* and *Frank E. Bishop,* for appellant.

*R. A. Batty, W. D. Oldham* and *Adams & Adams,* contra.

REESE, C. J.

This action is for damages resulting from the death of plaintiff's intestate, which is alleged to have been caused by the negligence of defendant. Plaintiff recovered a judgment. Defendant appeals.

The uncontroverted facts may be stated to be that Thomas E. Shanahan, the deceased, was a passenger on a freight train from Coburg, in the state of Iowa, to the

village of Axtell, in this state; that his right to travel on
a freight train grew out of a contract with defendant for
the shipment of a car-load of property, consisting in part
of a horse, and household furniture, and by reason thereof
he remained with the car for the purpose of caring for
the shipment.    The car was placed in a fast through-
freight train which did not stop at Axtell, and when it
arrived at Hastings in the afternoon it was cut off the
train and sidetracked, to be picked up and carried for-
ward by a local train the next morning.    The track yards
at Hastings are large, and the car was placed upon a
track remote from that of the main line.    The deceased
left the car in the evening and went into the city, remain-
ing there until about the middle of the night, when he
attempted to return to his car.    In his effort to do so he
sought the assistance of the yardmaster of the track
yards, who directed him how to reach his car.    There is
some evidence tending to prove that he was, to some ex-
tent, under the influence of liquor, but that is not deemed
material to the inquiry as to the giving or refusing of the
instruction hereinafter set out.    When directed as to the
location of the car he requested the yardmaster to accom-
pany him thereto, but the yardmaster being busy de-
clined to do so.    So far as is shown by the evidence, this
was the last seen of him until about 2 o'clock the next
morning, when the through-passenger train came in.
This train was running rapidly—at the rate of from 25 to
35 miles an hour.    The fireman was called as a witness
by the plaintiff, and testified that, upon looking ahead of
the train from the window on his side of the cars, he saw
some object by the side of the track and outside of the
rails some 140 to 150 feet ahead, which he took to be a
pile of cinders, or a drawhead, but as the engine passed
it he thought it assumed the form of a man, lying with
the head near the end of the ties and the feet away from
the track, the body lying perpendicular to the track.    This
was probably a mile from the station.    When the train
arrived at the station, he informed the employees of de-

fendant of what he had seen, when a switch engine was run out, and the deceased found, yet living, but badly injured, his feet being toward the track, and without any coat on or about him. One of defendant's employees was left with him until an improvised stretcher—a grain door—was procured, when he was taken to the station, and an ambulance or a conveyance was called, when, with the surgeons in attendance upon him, he was removed to a hospital and died the next day. Upon an examination of his clothing, it was found that one of his trouser's pockets was drawn from its place and turned inside out. His pocket-book, containing a sum of money, was found on the opposite side of the track from where he was lying, but appears not to have been otherwise molested. How, or by what means, the pocket was turned and the pocket-book placed where it was found is not known. At the time he entered the yards he had with him a coat, and protruding from the pockets of which, it is said, were two beer bottles. Two broken beer bottles were found near where he was lying. On the examination of his car the next morning, a coat answering the general description of the one he had when entering the track yards was found hanging therein, and his cot appeared prepared for occupancy, but had not been occupied. A number of empty beer bottles were found in the car. His injury consisted in part of one of his legs being crushed or cut off, as though run over by a car wheel. If the plaintiff's principal witness, the fireman on the train, was not mistaken, it seems improbable that the injury could have been caused by that train, unless deceased, in an effort to rise, had cast himself upon the track and thus brought himself in front of the rapidly moving wheels of the train; but there is no evidence of such an effort, and he was under the eye of the fireman from the time he was first seen until the engine had passed him. He had been hurt before that train reached him, or the injury must have been caused in some way by the cars following the engine. The above is substantially a correct statement of the facts,

but without detail as to the evidence, as it is not our purpose to review it. It is claimed that defendant was negligent in not accompanying deceased to his car, and in not caring for him after discovering him, as he should have been cared for. But these questions need not be discussed here.

Defendant asked the court to give instruction numbered 9, of those asked by it, but which the court refused to give. It is as follows: "The jury are instructed that if Thomas Shanahan went to his car, or put his coat in the car, after he had been directed to it by the yardmaster, and after that wandered away from the car over to the main-line track where he lay upon the ground dangerously near to or in the way of the train passing on that track, then in that position he was a trespasser, and the enginemen were not bound to expect his presence there, nor to look out with a view to discover him, and the defendant is not liable because the train could not be or was not stopped before reaching and passing him." There was some evidence which tended to prove, inferentially, that deceased had found and entered his car after meeting the yardmaster. If this were true, it would eliminate all claim of negligence on the part of the yardmaster in not accompanying Shanahan to his car. Also, if this were true, it would terminate all obligation and responsibility of the defendant to him as a passenger. The relation of carrier and passenger, as between them, would not exist, for the reason that, by leaving his car and going upon the tracks, he would be acting upon his own volition disconnected with his carriage, and would, in that sense, be a trespasser. True, he had the right, as such passenger, to be within the track yards, but as such only in connection with his car and the care of his property therein. Then if he wandered away from his car over to the main-line track, which was shown to be quite a distance from his car, where he lay upon the ground dangerously near to the track, his presence there would not ordinarily be expected, nor would a special lookout

44

be required with reference to him.   As we view the conceded facts in the case, we are of opinion that the instruction should have been given in substance, and that it was prejudicial error to refuse it.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.